**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 CA 0229

LUKE J. GREZAFFI

VERSUS

PAUL BRYAN CARROLL AND MIKKI GREMILLION CARROLL

Judgment Rendered: **APR 06 2023**

\* \* \* \* \*

On Appeal from the
18th Judicial District Court
In and for the Parish of Pointe Coupee
State of Louisiana
Trial Court No. 49886

Honorable Elizabeth A. Engolio, Judge Presiding

\* \* \* \* \*

William C. Shockey
Alex T. Griffin
Baton Rouge, LA

Attorneys for Plaintiff-Appellee,
Luke J. Grezaffi


James C. Dewey
New Roads, LA

Attorney for Defendant-Appellant,
Paul Bryan Carroll


Cy J. D'Aquila, Jr.
James C. Dewey
New Roads, LA

Attorneys for Defendant-Appellant,
Mikki Gremillion Carroll


Dannie P. Garrett, III
Baton Rouge, LA

Counsel for Amicus Curiae,
Pointe Coupee Parish Government

\* \* \* \* \*

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

**HESTER, J.**

This matter is before us on appeal by defendants, Paul Bryan Carroll and Mikki Gremillion Carroll, from judgments of the trial court, permanently enjoining defendants from interfering with Luke J. Grezaffi's passage on Lee Lane in Pointe Coupee Parish, State of Louisiana, awarding damages and attorney's fees to Mr. Grezaffi, and assessing costs of court, including expert witness fees, to defendants. For the reasons that follow, we reverse the trial court's judgment overruling Mr. Carroll's exception raising the objection of nonjoinder, set aside the judgments awarding the relief delineated above, and remand the matter to the trial court.

## FACTS AND PROCEDURAL HISTORY

In 1990, Mr. Carroll and his former wife, Mikki Carroll, acquired a tract of farmland (approximately 246 acres) near Batchelor, Louisiana in Pointe Coupee Parish. The current Carroll Tract was part of a larger tract previously owned by R.E. Lee, which was subdivided into Lot 2 and Lots 1-A and 1-B, which were later resubdivided into Lots 1-A-1 and 1-B-1.[1] A portion of the Carroll Tract is bordered by Black Bayou. The Carroll Tract is also bordered on two edges by a smaller tract of land, which is known as the Smiley Tract. The Carroll Tract and the Smiley Tract can be accessed from Louisiana Highway 419 through Lee Lane, which follows the property line of Lot 2 and makes a sharp right (westerly) turn in the direction of Black Bayou, successively abutting the property lines of Lots 2, 1-B-1, 1-A-1 (the Carroll Tract), and the Smiley Tract. Central to the dispute herein is whether Lee Lane is a public road all the way through the Carroll Tract and the Smiley Tract or

---

[1] According to the survey plat by James M. Joffrion, originally dated April 18, 1963, revised on April 30, 1984, and referenced in the August 28, 1990 Cash Sale from R.E. Lee to the Carrolls, the Carroll Tract was part of a larger tract which was subdivided with the Carrolls acquiring Lot 1-A. According to an Act of Exchange dated April 24, 1992, the Carrolls, as owners of Lot 1-A, and R.E. Lee, as the owner of Lot 1-B, transferred portions of their respective property to one another, which was depicted on a survey made for the Carrolls and R.E. Lee by Charles R. St. Romain, dated September 22, 1990. As a result of the Act of Exchange, Lots 1-A and 1-B were resubdivided into Lots 1-A-1 and 1-B-1, utilizing Black Bayou as the new boundary line.

2

whether the public road ended at the property line (Black Bayou) of the Carroll Tract, which was just past the Joey Kent/Bobby Lee (Kent-Lee) house on the neighboring tract.[2]

Figure 1:



Mr. Carroll farmed the Smiley Tract for 30 years. Mr. Carroll would sometimes haul crops out from the Smiley Tract using Lee Lane, but "[m]ost of the time [he'd] go back out to 419 on [his] improved turnrow," as Mr. Carroll has access to the Carroll tract, his home, and his farming headquarters directly from Highway 419. At some point during the period of time he farmed the property, Mr. Carroll

---

[2] The disputed portion of Lee Lane spans the length of 814 feet, and the length of Lee Lane from Highway 419 to the disputed portion is 8,472 feet.

replaced a culvert on the Smiley Tract where Lee Lane crosses Sandy Bayou at his expense.[3]

In June of 2019, the Smiley Tract was sold at a sheriff's sale. At the time of the sale, Mr. Grezaffi owned approximately a sixteen percent (16%) interest in the Smiley Tract and Mr. Carroll owned approximately a six percent (6%) interest in the Smiley Tract. While Mr. Carroll was present at the sheriff's sale and bid on the property, he was outbid by Mr. Grezaffi. When Mr. Grezzafi became the full owner of the Smiley Tract, Mr. Carroll already had a soybean crop on the property, which he was allowed to harvest. Mr. Carroll and Mr. Grezzaffi had multiple conversations concerning federal money, back rent, and Mr. Carroll's continued lease of the Smiley Tract. However, Mr. Grezaffi ultimately decided not to lease the property to Mr. Carroll, thereby ending Mr. Carroll's farming operations on the property. Subsequently, on or about April 1, 2020, Mr. Carroll installed chains and a "Posted" sign on Lee Lane at the point where the road enters his property and removed the culvert he previously installed at Sandy Bayou.

After Mr. Grezaffi encountered the chains and "Posted" sign and saw that the culvert at Sandy Bayou had been removed, he approached Mr. Carroll. Mr. Grezaffi stated that Mr. Carroll informed him that he decided to block Mr. Grezaffi from the Smiley Tract after not being permitted to lease it and that Mr. Carroll moved the culvert at Sandy Bayou to his own property because he was the one who installed it. Subsequently, Mr. Grezaffi and his attorney called Mr. Carroll a number of times to see about working out an agreeable solution, but Mr. Carroll neither answered nor returned their calls.

---

[3] According to Mr. Carroll, the previous culvert at Sandy Bayou collapsed, necessitating its replacement. He further testified that the culvert was located further down from his property, about two-thirds of the way into the Smiley Tract.

4

Ultimately, Mr. Grezaffi filed the instant lawsuit against the Carrolls on July 31, 2020, seeking preliminary and permanent injunctive relief ordering the Carrolls to open Lee Lane, remove all obstructions therefrom at their expense, and not to interfere with Mr. Grezaffi's use of and passage on Lee Lane. Alternatively, Mr. Grezaffi prayed for the establishment of a predial servitude of passage along Lee Lane across the Carroll Tract for the benefit of the farmland portion of the Smiley Tract.[4]

While not named as a party, the Pointe Coupee Parish Government ("the Parish") filed an *amicus curiae* brief with the trial court on August 11, 2020. In its brief, the Parish noted that the demands made in the petition were limited to injunctive relief relative to the blocked passage of the disputed portion of Lee Lane and the claim for a predial servitude of passage, on which the Parish acknowledged it had no interest or position. Notwithstanding, the Parish acknowledged that the claims and assertions made in the petition were "replete with explicit and implied allegations of fact and law … essentially asserting that the disputed portion of Lee Lane is a public road in the Parish road system." The Parish further observed that "despite no such language in the prayer of the Petition, the Plaintiffs could urge the Court to find the disputed portion of Lee Lane to be a public road."[5] Finally, the Parish asserted that it is a necessary party under La. Code Civ. P. art. 641,[6] and should the "trial court grant the implicit demand … that the disputed portion of Lee Lane is a Parish public road" without the Parish being added as a party, that ruling would be subject to nullity.

---

[4] The entirety of the Smiley Tract contains two contiguous tracts purchased by Mr. Grezaffi at the same time: a wooded portion, which is accessible through Normandy Road, and a farmland portion.

[5] In support of this assertion, the Parish relies on La. Code Civ. P. art. 862 and **Miller v. Thibeaux**, 2014-1107 (La. 1/28/15), 159 So.3d 426, 432.

[6] The Parish asserted that in a matter seeking to declare a roadway to be a public road, the Parish is a necessary party, citing to **Griffith v. Cathey**, 99-923 (La. App. 3d Cir. 2/2/00), 762 So.2d 29, 33, writ denied, 2000-1875 (La. 10/6/00), 771 So.2d 85.

A hearing on the preliminary injunction was held on August 12, 2020, during which testimony was heard and evidence submitted. At the conclusion of the hearing, the trial court permitted post-hearing memorandums to be submitted and took the matter under advisement. On August 18, 2020, the trial court signed a judgment issuing a preliminary injunction in favor of Mr. Grezaffi and against the Carrolls, ordering the Carrolls to remove the obstruction from the road known as Lee Lane at their expense and to refrain from interfering with Mr. Grezaffi's right of passage on Lee Lane to the Smiley Tract.

Thereafter, Mr. Grezaffi filed an amended petition, adding additional paragraphs to assert claims under the Louisiana Unfair Trade Practices Act, La. R.S. 51:1404, *et seq.* ("LUTPA") and to request damages, legal interest, attorney's fees, and costs. In response, Mr. Carroll filed a peremptory exception raising the objection of nonjoinder of a party under La. Code Civ. P. art. 641(2)(a), maintaining that the Parish was an interested party in the lawsuit. The trial court overruled the exception in a judgment dated February 11, 2021.

A bench trial was held on May 17 and 18, 2021. At the conclusion of the second day, the trial court invited the parties to submit their closing arguments in the form of post-trial memorandums, keeping the matter pending until the trial court reached a decision. After memorandums were submitted by all parties,[7] the trial court issued an October 13, 2021 "Judgment Granting Permanent Injunction" in which it explicitly found that Lee Lane was a public road, finding that the Parish maintained the road for over three years and noting that "Lee Lane has been designated as a public road on plats in 1939, 1944, [and] 1963 and recorded in the public record." The trial court further permanently enjoined the Carrolls from

---

[7] In light of the arguments raised in Mrs. Carroll's post-trial memorandum regarding Mr. Grezaffi's failure to state a cause of action for his claim to a servitude of passage for the benefit of the Smiley Tract as an enclosed estate as provided in La. Civ. Code art. 689, *et seq.*, Mr. Grezaffi filed a second amended petition with leave of court in an effort to remove the grounds upon which Mrs. Carroll's argument was based.

6

interfering with Mr. Grezaffi's passage on Lee Lane, awarded damages and attorney's fees to Mr. Grezaffi, and assessed the Carrolls with costs of court, including expert witness fees.

Mr. Grezaffi filed a partial motion for new trial, seeking to have judicial interest included with the award of damages, and filed a motion to tax costs. On December 17, 2021, the trial court held a hearing on the partial motion for new trial and the motion to tax costs.[8] The trial court orally issued its rulings and, together with counsel, drafted a judgment granting the partial motion for new trial, but limiting it to argument only, and amending the October 13, 2021 judgment to provide for judicial interest and to expressly state that the costs of court were taxed and set forth in a separate judgment. This judgment was signed on December 17, 2021 and the judgment taxing costs was signed on January 3, 2022.

The Carrolls both appealed, assigning the following errors:

1. The trial court was incorrect in determining that the lane at issue was dedicated to the public because of a tacit dedication under La. R.S. 48:491;

2. The trial court was incorrect in refusing to grant Mr. Carroll's exception of failure to join the Parish as a party;

3. The trial court was incorrect in its determination of the amount of damages suffered by and awarded to Mr. Grezaffi; and

4. The trial court was incorrect in granting Mr. Grezaffi the sum of $125,000 in attorney's fees.

Grezaffi answered the appeal, seeking modification of the judgment to include an additional award of attorney's fees for services rendered to Mr. Grezaffi in connection with the appeal.

---

[8] The transcript further indicates that Mr. Grezaffi's counsel orally amended the partial motion for new trial and was joined by counsel for Mrs. Carroll regarding the October 13, 2021 judgment's decree casting Mrs. Carroll with damages. As noted by Mr. Grezaffi's attorney, the amended petition specifically requested damages from Mr. Carroll only. We further note that, during the trial, counsel for Mr. Grezaffi stressed the fact that he was only seeking an injunction against Mrs. Carroll and not seeking any damages from her. The trial court acknowledged this point and granted the relief requested at the December 17, 2021 hearing. The December 17, 2021 amended judgment correctly casts only Mr. Carroll with damages.

## LAW AND DISCUSSION

The Carrolls assign as error the trial court's failure to sustain the peremptory exception raising the objection of nonjoinder of a party under La. Code Civ. P. art. 641(2)(a). The trial court's denial of Mr. Carroll's exception is an interlocutory ruling; however, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. E.g. **Judson v. Davis**, 2004-1699 (La. App. 1st Cir. 6/29/05), 916 So.2d 1106, 1112, writ denied, 2005-1998 (La. 2/10/06), 924 So.2d 167. Despite Mr. Grezaffi's argument that Mr. Carroll's exclusive remedy was through a timely writ application, relying on **Land v. Vidrine**, 2010-1342 (La. 3/15/11), 62 So.3d 36, we disagree.

The **Land** case involved the effect of failing to seek supervisory review of an adverse venue ruling. The court in **Land** concluded that when a plaintiff fails to object to the transfer of his case to another parish, it can be said he consented to the new location of the trial. The court reasoned that allowing a venue objection to be raised on appeal would ignore the fact that venue, which is solely a matter of convenience, does not affect the ultimate determination of the merits and creates a tactical scenario where a litigant who is not successful at trial can seek to retry the merits of the case when an otherwise valid judgment has already been rendered. **Land**, 62 So.3d at 41. In the case of nonjoinder, the resulting judgment is not "an otherwise valid judgment"; rather, it is an absolute nullity. See **Stephenson v. Nations Credit Fin. Servs. Corp.**, 98-1688 (La. App. 1st Cir. 9/24/99), 754 So.2d 1011, 1019.

Louisiana Code of Civil Procedure article 641 provides as follows:

A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.

8

(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:

(a) As a practical matter, impair or impede his ability to protect that interest.

(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

Louisiana Code of Civil Procedure articles 641 through 646 were amended by 1995 La. Acts, No. 662, § 1. Prior to their amendments, courts would distinguish between "necessary" and "indispensable" parties. Indispensable parties to an action were those whose interests in the subject matter are so interrelated, and would be so directly affected by judgment, that a complete and equitable adjudication of the controversy could not be made unless they were joined in the action. **Fewell v. City of Monroe**, 43,281 (La. App. 2d Cir. 6/11/08), 987 So.2d 323, 325, writ denied, 2008-2172 (La. 11/14/08), 996 So.2d 1093. No adjudication of an action could be made unless all indispensable parties were joined therein. **Id.** (citing **Frey v. Am. Quarter Horse Ass'n**, 95-157 (La. App. 5th Cir. 7/25/95), 659 So.2d 849, 852). Parties were deemed indispensable only when that result was absolutely necessary to protect substantial rights. **Id.** (citing **State Through Dep't of Highways v. Lamar Advert. Co. of Louisiana, Inc.**, 279 So.2d 671, 677 (La. 1973)).

The 1995 amendments to Louisiana's joinder articles eliminated the categories of "indispensable parties" and "necessary parties" in favor of a single category of "parties needed for just adjudication." **Indus. Companies, Inc. v. Durbin**, 2002-0665 (La. 1/28/03), 837 So.2d 1207, 1217 n.6. Notably, La. Code Civ. P. art. 641 retained the mandatory language as well as the principle that an action cannot be adjudicated unless all persons who are required by La. Code Civ. P. art. 641 to be joined as parties are joined in the litigation. Accordingly, an adjudication made without making a person described in Article 641 a party to the

9

litigation is an absolute nullity.[9] See **Stephenson**, 754 So.2d at 1018-19. Under the revision, an analysis of the interests of the joined and non-joined parties with respect to the action is required to determine whether the action may proceed. **Fewell**, 987 So.2d at 325.

This court has stated that the burden is placed on those already parties to the litigation to bring in all La. Code Civ. P. art. 641 persons, not upon the nonparties to intervene in actions to which they are required to be joined pursuant to La. Code Civ. P. art. 641. **Stephenson**, 754 So.2d at 1021. The language in La. Code Civ. P. art. 641 is mandatory, *i.e.*, persons described in the article *shall* be joined, whereas the language of La. Code Civ. P. arts. 1091 (intervention) and 2086 (appeal of nonparty) are permissive, *i.e.*, a third person *may* intervene or appeal. See **Id.**

Mr. Carroll maintains that the Parish is a person who shall be joined pursuant to La. Code Civ. P. art. 641(2)(a). Mr. Carroll argues that the Parish has an interest relating to the subject matter (involving the determination of whether a road is public or private) and is so situated that the adjudication of the action *may either* impair or impede the Parish's ability to protect that interest, as a practical matter, *or* leave any of the present parties (Mr. Grezaffi or the Carrolls) subject to substantial risk of incurring multiple or inconsistent obligations.

In response, Mr. Grezaffi cited no less than eighteen cases which he asserted support his argument that the Parish was not required to be joined in a suit in which the crucial determination is whether a road is public or private.[10] It is noted that the

---

[9] Pursuant to La. Code Civ. P. art. 645, the failure to join a party to an action may be pleaded in the peremptory exception, or may be noticed by the trial or appellate court on its own motion.

[10] **Curtis v. Goebel**, 101 So.2d 462 (La. App. 1st Cir. 1958); **Elum v. Kling**, 98 So.2d 700 (La. App. 1st Cir. 1957), writ denied, La. 1958); **Fontenot v. Veillon**, 72 So.2d 587 (La. App. 1st Cir. 1954); **Ferreute v. Tantilla**, 42 So.2d 379 (La. App. 1st Cir. 1949); **Trahan v. Fontenot**, 380 So.2d 1240 (La. App. 3d Cir. 1980); **Latour v. Dupuis**, 164 So.2d 620 (La. App. 3rd Cir. 1964); **Smith v. Mahfouz**, 489 So.2d 409 (La. App. 3d Cir. 1986), writ denied, 494 So.2d 1181 (La. 1986); **Strickland v. Stafford**, 322 So.2d 893 (La. App. 1st Cir. 1975); **Parish of St. James v. Bellanger**, 18-395 (La. App. 5th Cir. 12/27/18), 263 So.3d 919; **Foshee v. Longino**, 236 So.2d 870 (La. App. 3d Cir. 1970); **Braxton v. Guillory**, 98-379 (La. App. 3d Cir. 10/28/98), 721 So.2d 114; **Jefferson Davis School Board v. Fontenot**, 505 So.2d 955 (La. App. 3d Cir. 1987), writ

10

vast majority of the cases cited by Mr. Grezaffi make no mention of nonjoinder or La. Code Civ. P. art. 641, and some of these cases included the relevant local governing authority as a named party.

Particularly, in the almost 60-year-old case of **Latour v. Dupuis**, 164 So.2d 620 (La. App. 3rd Cir. 1964), the Third Circuit determined that because the suit only sought to restrain the named defendants from placing obstructions across a road alleged to be public, the joining of additional parties against whom the injunction was not issued was not required. In **Latour**, the defendants blocked a portion of a road, restricting plaintiff's access to his property. Plaintiff maintained that the road was public through tacit dedication pursuant to La. R.S. 48:491 and that defendants could not restrict his use. Defendants urged the exception asserting the objection of nonjoinder of the parish and of other landowners whose property abutted the road at issue, which the trial court overruled. The court reasoned that the title or ownership of the land was not an issue raised by the pleadings and, therefore, joinder of additional parties was unnecessary, questionably relying on **Elum v. Kling**, 98 So.2d 700 (La. App. 1st Cir. 1957), <u>writ denied</u>, (La. 1958). **Latour**, 164 So.2d at 621-22.

While **Elum** involved the determination of whether a road was public, the issue in **Elum** did not encompass nonjoinder. Rather, the salient issue was whether the defendant could bring a third-party action against a parish government for indemnity. Finding that the parish government could not be found liable to the defendant upon the principal demand (for a judgment restraining defendant from blocking and obstructing a public road), the court affirmed the trial court's ruling sustaining the exception asserting the objection of no cause of action raised by the parish government. **Elum**, 98 So.2d at 701. The holding in **Elum** does not support,

---

denied 511 So.2d 1154 (La. 1987); **Vermillion Parish Police Jury v. Landry**, 485 So.2d 253 (La. App. 3d Cir. 1986); **Wise v. Key**, 445 So.2d 98 (La. App. 2d Cir. 1984); **LeBoeuf v. Roux**, 125 So.2d 444 (La. App. 3d Cir. 1960); **Winn Parish Police Jury v. Austin**, 216 So.2d 166 (La. App. 2d Cir. 1968); **Village of Dodson v. Hill**, 29,042 (La. App. 2d Cir. 1/22/97), 687 So.2d 626; and **Gatson v. Bailey**, 39,835 (La. App. 2d Cir. 6/29/05), 907 So.2d 859.

even tenuously, the conclusion reached in **Latour** by the Third Circuit and is inapposite to the issue of nonjoinder.

Mr. Grezaffi also relies on the Second Circuit case of **Gatson v. Bailey**, 39,835 (La. App. 2d Cir. 6/29/05), 907 So.2d 859, which we find distinguishable. In **Gatson**, the police jury formally abandoned a road pursuant to La. R.S. 48:701,[11] which road previously had been tacitly dedicated. **Id**. at 861-62. While the Second Circuit acknowledged that the language of La. R.S. 48:701 arguably indicates that the provision applies only to dedicated roads or streets whose "soil" or full ownership is vested in the public by recordation of a plat or by a title instrument in favor of the public authority, the court concluded that, in the absence of comprehensive legislation for this situation, courts of this state have applied La. R.S. 48:701 and its standard to tacitly dedicated roads. **Id**. at 863 (citing Hargrave, *Developments in the Law—Property*, 50 La. L. Rev. 353 (1989)). The Second Circuit recognized the jurisprudential rule that even after a police jury has in fact abandoned maintenance of a tacitly dedicated road and refuses to recognize the road as public, the right of owners along the road to use the road as a servitude may be upheld.[12] The court further noted that the jurisprudence established that a formal act of abandonment by a public authority can be revoked after its issuance by judicial review.[13] **Id**. at 863.

---

[11] Louisiana Revised Statutes 48:701 provides that "parish governing authorities and municipal corporations of the state … may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes." The statute further provides that "[u]pon such revocation, all of the soil covered by and embraced in the roads, streets, or alleyways up to the center line thereof, shall revert to the then present owner or owners of the land contiguous thereto."

[12] **IP Timberlands Operating Co. v. De Soto Par. Police Jury**, 552 So.2d 605 (La. App. 2d Cir. 1989); **Fore v. Volentine**, 385 So.2d 860 (La. App. 2d Cir. 1980); and **Latour**, supra.

[13] **Am. Sec. Bank of Ville Platte v. Rebokus**, 527 So.2d 71 (La. App. 3d Cir. 1988); **Anderson v. Police Jury of E. Feliciana Par.**, 452 So.2d 730 (La. App. 1st Cir. 1984), writ denied, 457 So.2d 13 (La. 1984); and **Luneau v. Avoyelles Par. Police Jury**, 196 So.2d 631 (La. App. 3d Cir. 1967).

In **Gatson**, after the police jury's abandonment, an affected member of the public brought suit to re-establish his access to the public road and, in the alternative, requested that a new right of passage be established pursuant to La. Civ. Code art. 689 across the defendant's tract of land. **Gatson**, 907 So.2d at 861. In evaluating "issues of standing and joinder of parties," the Second Circuit observed that the jurisprudence permits a member of the public whose land is directly affected by the action of the public authority to bring suit against *either* the public authority *or* another property owner who claims the public right of use has ended and prevents the exercise of the right.[14] Therefore, the Second Circuit found that the police jury was not required to be joined in the action under La. Code Civ. P. art. 641, *et seq.* or the jurisprudence providing for judicial review of acts of abandonment by a parish authority. **Id**. at 863. The present case does not involve the judicial review of an abandonment action, which procedure specifically allows suit to be brought against *either* the public authority *or* a property owner claiming the public right of use has ended and prevents the exercise of the right. Rather, in this case, Mr. Grezaffi is seeking acknowledgment that the road is public through tacit dedication, and Mr. Carroll is claiming the road is not now and never was public.

In the *amicus curiae* brief filed with the trial court prior to the filing of the exception by Mr. Carroll, the Parish relied upon **Griffith v. Cathey**, 99-923 (La. App. 3d Cir. 2/2/00), 762 So.2d 29, writ denied, 2000-1875 (La. 10/6/00), 771 So.2d 85, in support of its mandatory joinder in this suit. Mr. Grezaffi argues that **Griffith** does not "state that a parish is a required party under Article 641 in a matter seeking to declare a roadway to be a public road." In **Griffith**, plaintiffs sought to have a paved road declared as their private property, free of all servitudes, and defendants claimed to have a predial servitude of passage over that portion of the road traversing

---

[14] E.g. **Luneau**, supra (suit against public authority) and **Am. Sec. Bank of Ville Platte**, supra (suit against private property owner).

13

plaintiffs' property. Plaintiffs appealed the trial court's ruling that the road was privately owned by plaintiffs but had become subject to use by the public through acquisitive prescription, specifically assigning error to the trial court's grant of defendants' exception raising the objection of nonjoinder and ordering the police jury be joined as a necessary party to the action. **Id**. at 31-32. The Third Circuit found that because the police jury was possibly the owner of the property at issue and potentially vested with the authority to grant the predial servitude in dispute, the requirements set forth in La Code Civ. P. art. 641 for mandatory joinder were met. **Id**. at 33. Accordingly, no error was found in the trial court's grant of the exception.

We acknowledge that Mr. Grezaffi was careful to refrain from requesting declaratory relief from the trial court, *i.e.*, a declaration that Lee Lane was a public road. When declaratory relief is sought, Louisiana law mandates that "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." La. Code Civ. P. art. 1880. An affected, interested person must be cited in a declaratory judgment action when his existence and claim are evident. **Fewell**, 987 So.2d at 326 (<u>citing</u> **Blanchard v. Naquin**, 428 So.2d 926, 928 (La. App. 1st Cir. 1983)).

Notwithstanding, the very nature of the relief requested by Mr. Grezaffi puts at issue and requests a determination of the private or public status of Lee Lane. More particularly, Mr. Grezaffi asserted in his post-trial memorandum that he "is entitled to a finding that Lee Lane is and *remains a public road by tacit dedication*" and argued in the alternative that "[i]n the event and only in the event that the [c]ourt determines that the part of Lee Lane at issue, though once public, is no longer public …". (Emphasis added). Mr. Grezaffi concludes his post-trial memorandum, stating that the trial court "should find that Lee Lane is a public road all the way to its western end and that Bryan Carroll unlawfully obstructed the road."

14

We note that the dedication of property for public use may be accomplished in four ways: statutory dedication, formal dedication, implied dedication, and tacit dedication. **Himel v. Bourque**, 2014-1811 (La. App. 1st Cir. 12/11/15), 185 So.3d 42, 45. The classification of a dedicated road determines its ownership. Generally, a statutory dedication vests ownership of the land under the streets in the public, whereas a tacit dedication creates a servitude of passage in favor of the public, but the ownership of the land remains with the adjoining landowners. **Id**. at 45-46. See generally A.N. Yiannopoulos & Ronald J. Scalise Jr., 2 Louisiana Civil Law Treatise, Property, Ch. 6. Dedication to Public Use: Highways, Roads, and Streets (5th ed. Sept. 2022)).

Tacit dedication, *i.e.*, dedication by operation of law, does not require intent of the landowner to dedicate the property when there has been sufficient maintenance without protest. **Himel**, 185 So.3d at 47; see **Rowe v. Harvey**, 307 So.2d 103, 106 (La. App. 1st Cir. 1974), writ denied, 310 So.2d 642 (La. 1975). This court has acknowledged that the underlying rationale of La. R.S. 48:491 is protection of the public fisc, guarding against the use of public monies for the benefit of private landowners. **Id**. (citing **Moret v. Williams**, 582 So.2d 975, 977 (La. App. 1st Cir. 1991).

The trial court's determination that Lee Lane was a public road by virtue of tacit dedication is inextricably linked to the rights and obligations of the Parish. The adjudication of this matter, which hinged primarily on the determination of whether Lee Lane was tacitly dedicated, in the absence of the Parish will, as a practical matter, impair or impede the Parish's ability to protect its interest in the public or private nature of Lee Lane. See **Terrebonne Par. Sch. Bd. v. Bass Enterprises Prod. Co.**, 2002-2119 (La. App. 1st Cir. 8/8/03), 852 So.2d 541, 545, writs denied, 2003-2786, 2003-2873 (La. 1/9/04), 862 So.2d 984 and 985. By acknowledging that Lee Lane was, in fact, tacitly dedicated, the trial court legally recognized that this

15

road had become public by operation of law. This determination, which was required in order to grant or deny the relief requested, necessarily impacts the rights and obligations of the Parish to maintain the road, among other implications, and impedes the Parish's ability to maintain its assertion that the disputed portion of Lee Lane is not public.

Accordingly, we find merit in the Carrolls' second assignment of error and determine that the trial court erred as a matter of law in overruling Mr. Carroll's exception asserting the objection of nonjoinder. We sustain Mr. Carroll's exception asserting the objection of nonjoinder. Because an adjudication made without making a person described in La. Code Civ. P. art. 641 a party to the litigation is an absolute nullity, we must set aside the judgment of the trial court. See **Stephenson**, 754 So.2d at 1018-19; **Terrebonne Par. Sch. Bd.**, 852 So.2d at 544.

## CONCLUSION

For the reasons expressed herein, the February 11, 2021 judgment overruling Paul Bryan Carroll's exception raising the objection of nonjoinder is reversed, and we sustain Paul Bryan Carroll's exception raising the objection of nonjoinder. Further, the October 13, 2021 judgment and December 17, 2021 amended judgment are set aside, and this matter is remanded to the trial court for further proceedings in accordance with this opinion. Mr. Grezaffi's answer to the appeal is denied. All costs of this appeal are assed to Luke J. Grezaffi.

**FEBRUARY 11, 2021 JUDGMENT REVERSED; OCTOBER 13, 2021 JUDGMENT AND DECEMBER 17, 2021 AMENDED JUDGMENT SET ASIDE; AND REMANDED; ANSWER TO APPEAL DENIED.**

16