McDonald, j.
I'aThis is an appeal from a judgment declaring a predial servitude to have been dedicated to public use and granting a landowner full access to his property from that predial servitude. For the following reasons, we amend'the judgment in part and affirm. '
FACTUAL AND PROCEDURAL BACKGROUND
In 1992,- owners of unimproved property in Ascension Parish, Louisiana, executed an agreement to establish a forty-foot wide servitude of passage basically, running ¡north-south from Louisiana Highway 74, consisting in relevant part of “the east twenty (20) feet of Lots 1, 2, and 3[,] and the west twenty (20) feet of Tract A, and [running] to the north boundary of Tract A and [Lot 3,]’’ as shown on an attached survey plan (the-1992 servitude). Sometime in 1994, the then owners on either side of-the servitude shared the cost to put in' a gravel road, and in 1999 or 2000, at the owners’ request, Ascension Parish paved the road. However, the paved portion of the servitude, now known as Hanson Road, does not extend the full length of the 1992 servitude; that is, it begins at Highway 74 and runs north, but stops short of what was described in the 1992 servitude agreement as “the north boundary of Tract A and [Lot] 3,”[1]
Todd Gautreau currently owns Lot 3 on the west side of the 1992 servitude, and Gregory Scot Himel currently owns the northernmost two lots of Tract A on the east side of the 1992 servitude.. The Gau-treau and Himel properties are bounded on the north by property owned by Thomas Bourque, Sr. As stated, Hanson Road is paved to a point just past the Gautreau and Himel driveways, but it dead ends there, and does not extend all the way to the boundary line separating the Gautreau and Himel properties from the Bourque property. The respective properties and Hanson Road are depicted on an Ascension Parish Assessor’s map, Joint Exhibit J — 13, an enlarged partial copy of which is attached to this opinion as Appendix A.
| «In December 2013, Mr. Bourque, Sr. contacted . several officials in Ascension Parish regarding his desire to use the “Hanson Road servitude” to access the southern portion of his property, that part contiguous to the Gautreau and Himel properties. He explained that the southern portion of his property was isolated from the- remainder of his acreage by Bayou Narcisse and that the bridge formerly used to cross the bayou had become unusable from disrepair. Mr. Bourque, Sr. was advised to submit an application to install culvert pipes in a ditch so that he could access Hanson Road, and an Ascension Parish drainage engineer later provided him the specifications for the appropriate materials to use'.
In early January 2014, Messrs. Gau-treau and Himel filed a petition for injunc-tive relief and damages against Mr. Bo-urque, Sr.; his son, Thomas Bourque, Jr.; *45 and the Ascension Parish Public Works Department, seeking to prohibit the construction of Hanson Road beyond its current paved portion. In late January 2014, Messrs. Gautreau and Himel had a map drawn up for the purpose of seeking a revocation of the last forty feet of the 1992 servitude, the most northernmost portion of the servitude contiguous to the shared border among the Gautreau, Himel, and Bourque properties. Because of the pending litigation, Ascension Parish officials took no action on the revocation request.
The Bourques answered the suit and later filed a reconventional demand against Messrs. Gautreau and Himel, seeking declaratory relief regarding them rights to access the 1992 servitude and/or Hanson Road and for damages. The record contains no answer filed by the Ascension Parish Public Works Department. The matter proceeded to a bench trial, where the parties jointly introduced several exhibits, a list of established facts, and witness testimony. At trial, the parties also agreed to disrhiss all claims against Thomas Bourque, Jr. and any claims for damages. At the conclusion of 'the trial, the trial court took the matter under advisement.
On July 18, 2014, the trial court signed a judgment in the Bourques’ favor, declaring that: (1) Hanson Road is a public road; (2) the forty-foot right of way shown on a 2009 map signed by Mr. Himel was dedicated to the public; ■ (8) the forty-foot right of way extends from-Highway 74 to the northern property boundary of Gautreau and I ¿Himel, which is contiguous with the southern property boundary of Thomas Bourque, Sr.; (4) the right of way has not lost its status as a public road by virtue of nonuse; (5) there has been no clear evidence of intent to abandon the right of way from the end of the paved portion of Hanson Road to the property line; and (6) Thomas Bourque, Sr., and all future owners of the tract at issue herein shall have free, full, and uninterrupted access to their property from Hanson Road.
Messrs. Gautreau and Himel appeal from the adverse judgment, generally challenging the trial court’s-determinations regarding the proper characterization of the 1992 servitude and/or Hanson Road as public rights of way. Although we do not address each assignment of error individually, this opinion adequately disposes of all issues raised. See Pike v. National Union Fire Insurance Company, 00-1235 (La.App. 1 Cir. 6/22/01), 796 So.2d 696, 698 n. 6.
DISCUSSION
The dedication of property for public use may be accomplished in four ways: statutory dedication, formal dedication, implied dedication, and tacit dedication. See Stonegate Homeowners Civic Ass’n. v. City of Baton Rouge/Parish of East Baton Rouge, 01-2883 (La.App. 1 Cir. 12/20/02), 836 So.2d 440, 443, writ denied, 03-0786 (La.5/9/03), 443 So.2d 407-08; Melancon v. Giglio, 96-2507 (La.App. 1 Cir. 3/13/98), 712 So.2d 535, 539. The trial court determined that the entirety of the 1992. servi tude was statutorily dedicated. We conclude the'trial court erred in making this classification, and we instead conclude that the entirety of the 1992 servitude has been tacitly dedicated as- a public road.- This distinction is noteworthy because the -classification of-a dedicated road determines its ownership — that is, generally, a statutory -dedication vests ownership of the land under the streets in the 'public, whereas a tacit dedication creates a servitude of passage in favor of the public, but the ownership of the land remains with the adjoining landowners. See generally, A.N. Yianno-poulos-, 2 Louisiana Civil Law Treatise, Property, Ch. 6. Dedication to -Public Use: *46 Highways, Roads, and Streets (4th ed. Oct 2014). We dispose of the statutory dedication issue first.
IbA statutory dedication requires compliance with LSA-R.S. 33:5051, which imposes on subdividers of land certain duties, including the filing of plats and the recordation of a formal dedication of all the streets to public use. Melancon, 712 So.2d at 539. A statutory dedication vests ownership of the land under the streets in the public, unless the subdivider indicates otherwise. Id. The intent to dedicate a street is generally presumed from the act of filing a subdivision plat containing public dedication language. Cavaness v. Norton, 96-1411 (La.App. 1 Cir. 5/9/97), 694 So.2d 1174, 1178. However, the plat must be given a rational construction. 6444 Associates, L.L.C. v. City of Baton Rouge, 02-1779 (La.App. 1 Cir. 5/9/03), 851 So.2d 1169, 1172, writ denied, 03-2681 (La.12/12/03), 860 So.2d 1164. When a rational construction negates the intent of the subdividing landowner, the fact that a reference to a street appears on a map does not, of itself, effect a dedication of that street to public use. Id.
The trial court determined the entire length of the 1992 servitude was statutorily dedicated by Mr. Himel in 2009 when he purchased a tract of land from Mark Gonzales adjacent to his .existing lots on Hanson Road. At the time of the 2009 purchase, a map signed by Messrs. Himel and Gonzales was submitted to Ascension Parish authorities for approval. The map clearly showed the north end of the servitude for Hanson Road extending all- the way to the northern boundary line of the Gautreau and Himel properties. The map also included public dedication language stating, “[t]he street[s] and rights of way shown hereon, if not previously dedicated are hereby dedicated to the perpetual, use of the public for proper purposes.”
However, the evidence indicates that Mr. Gonzales was not developing a subdivision when he sold the tract--of land to Mr. .Himel, The 2009 map was prepared for the -limited purpose of the sale between Messrs. - Himel and Gonzales for land that did.not border Hanson Road nor the 1992 servitude. The statutory requirement that a landowner dedicate all streets or alleys between the lots he-sells does not necessarily contemplate that a bordering, existing right of way or street is part of that dedication. See Pioneer Production Corporation v. Segraves, 340 So.2d 270, 274 (La.1976), Further, the 2009 map does not show the entire length of Hanson Road, nor does it | ^contain Mr. Gautreau’s signature, a part owner of property underlying the 1992. servitude, nor the signatures of any of the other residents whose property bordered Hanson Road. Also, the dedication statement on the 2009 map applies only to streets or rights of way “not previously dedicated.” The 1992 servitude was “previously dedicated” by virtue of the 1992 servitude agreement. The fact that the property at issue was the subject of the 1992 pre-existing conventional servitude is an indication that the 2009 map did not effect a statutory dedication of that property. See Pioneer Production Corporation, 340 So.2d at 276; 6444 Associates, L.L.C., 851 So.2d at 1172.
Thus,= the inclusion on the 2009 map of the dedication language, as required by LSA-R.S. 33:5051, does not persuade us that the 1992 servitude or the paved portion of Hanson Road was a part of the dedicated property. Rationally construing the 2009 map, we,conclude the partial appearance of the 1992 servitude and Hanson Road on that map, as merely a bordering, existing road, which was not the subject of the Gonzales/Himel sale, did not effect a statutory dedication of either. The trial court erred in concluding otherwise. .
*47 However, our inquiry does not end with a finding that no statutory dedication occurred. The formation of a public road may occur via tacit dedication under LSA-R.S. 48:491, which provides, in pertinent part:
(B)(1)(a) All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish ... shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.
A two-pronged burden of proof exists under LSA-R.S. 48:491. First, it must be shown that there has been sufficient maintenance; second, it must be shown that the landowner had knowledge of or acquiesced in the public maintenance. Moret v. Williams, 582 So.2d 975, 977 (La.App. 1 Cir.1991). Tacit dedication does not require intent of the landowner to dedicate the property when there has been sufficient maintenance without protest. Lincoln Parish Police Jury v. Davis, 21,392, 21,393 (La.App. 2 Cir.1990), 559 So.2d 935, 939. The underlying rationale of LSA-R.S. 48:491 |7is protection of the public fisc, guarding against the use of public monies for the benefit of private landowners. Moret, 582 So.2d at 977. Thus, if landowners accept public maintenance of the road upon which they live without protest, then they cannot protest the characterization of that road as public.
It is undisputed that, when the ancestors in title to Messrs. Gautreau and Hi-mel created the 1992 servitude, they intended that it extend all the way to the Bourque property line, as is shown on the map attached to the 1992 agreement.[2] And, in 1993, when a part of Tract A was sold, the map attached to that act of sale also showed the servitude extending all the way to the Bourque property line.[3] However, when Mr. Gautreau bought his property in 1994, there was no road yet built on the 1992 servitude. He and the other owners on either side of the 1992 servitude shared the cost to put down the gravel road that stops short of the north end of the 1992 servitude. In May -of 1999, pursuant to the landowners’; request, Ascension Parish accepted “Hanson Road” into its parish road maintenance system as Road Number 4820.[4] And, in 1999. or 2000, Ascension Parish paved the gravel road with asphalt, So, not only did the property owners acquiesce in the public maintenance of Hanson Road, they actually requested it.
Regarding the extent of Ascension Parish’s maintenance of Hanson Road, the evidence shows that such did occur in excess of the three-year period required by LSAR.S. 48:491. For example, as early as *48 1993 and 1994, Ascension Parish maintenance records show it set or moved culverts along Hanson Road, on more than one occasion; in 1998 and 1999, Ascension Parish removed a tree and cut a “cross ditch” at Mr. Gautreau’s request; as earlier stated, in 1999 or 2000, Ascension Parish paved Hanson Road; in 2000, Ascension Parish installed signage on Hanson Road; and, in 2001, lRAscension Parish approved a culvert installation permit for the property owned by Randy Walker and located at Í3074 Hanson Road,
• Although Messrs. Himel and Gautreau concede that the paved portion of Hanson Road is a public road, they argue that the unpaved portion is not. Mr. Gautreau, Mr. Himel, Mrs. Tracy Himel, and Pamela Ray, a resident at the southern end of Hanson Road, deny ever seeing" ányone use the unpaved portion of the servitude. On the other hand, the record contains admissions by Ascension Parish showing that it has used “the unimproved portion of Hanson Road” to access and clean a drainage servitude located between the Bourque property and the Gautreau/Himel property, and that Ascension Parish crews have crossed “the several hundred feet of property that lies between the end of the paved portion of Hanson Road and the [s]outhern boundary of Mr, Bourque’s property” to access,that drainage servitude at least since 2004. As corroboration, Mr. Thomas Bourque, Jr. testified that he has personally seen-Ascension Parish personnel drive beyond the paved portion of Hanson Road down to the drainage ditch. Further, Mr. Bourque, Sr,, as well, as his two sons, Thomas, Jr. and .Travis, testified that, ever since Hanson Road was only a gravel road (before 1999 or 2000), and until access to the unpavéd portion was roped off in 2013 or 2014, they had regularly driven onto the unimproved portion of the servitude, “up to the ditch,” to check the southern boundary of Mr. Bourque, Sr.’s property.
And, notwithstanding use of the unpaved portion, use of the paved portion of Hanson Road is sufficient to preserve the entire 1992 servitude. A tacit dedication of a road creates a predial servitude of passage in favor of the public.’ See Melancon, 712 So.2d at 539, citing A.N. Yiannopoulos, 2 Louisiana Civil Law Treatise, Property, § 100 at 220 (3rd ed. 1991). A partial use of a servitude constitutes use of the whole. LSA-C.C. art. 759. Thus, the fact that the Gautreaus and Hi-mels, as well as other Hanson Road residents, regulaHy use the road to access their respective properties is alone sufficient to preserve the- entire 1992 servitude. See Lincoln Parish Police Jury, 559 So.2d at 940 (the public status of a •road is not lost by prescription when parties to the suit use the road for access to their property).
Based on our de novo review of the record, we conclude that the above evidence |9proves that there has been sufficient maintenance of Hanson Road by Ascension Parish for a period of at least three years and that the adjoining landowners had direct knowledge of and acquiesced to this public maintenance without protest. Such evidence fulfills the requirements of LSA-R.S. 48:491 and supports the conclusion that a tacit dedication of Hanson Road has occurred. Thus,, by virtue of this tacit dedication, a servitude of passage and utility has been created in favor of the public over Hanson Road. Further, because the servitude of passage is a predial servitude, and because partial use of a servitude constitutes use of the whole, we find the evidence also proves that the tacit dedication includes the entire servitude of passage originally created in the 1992 servitude, that being a forty-foot wide *49 servitude running from Highway 74 all the way to the northern property boundaries of Messrs. Gautreau and Himel, which boundary separates their.' properties from that .property to the north owned by Mr. Bourque, Sr.[5]
CONCLUSION
For the foregoing reasons, we amend the July 18,2014 judgment to read:
IT IS ORDERED, ADJUDGED AND. DECREED . that Hanson Road is a public road that extends from Highway 74 to the northernmost boundaries of the properties currently owned by Todd Gautreau and Gregory Scot Himel, by virtue of a tacit dedication under LSA-R.S. 48:491. This tacit dedication created a servitude of passage in favor of the public, which affects the forty-foot strip of property as originally described in the October 10, 1992 Servitude of Passage, known to the parties as Joint Exhibit J-l, and attached to this opinion as Appendix B.
In all other respects, the July 18, 2014 judgment is affirmed. Costs of this appeal are assessed to Todd Gautreau and Gregory Scot Himel.
AMENDED, AND AS AMENDED, AFFIRMED.
THERIÓT, J. concurs with reasons.
McCLENDON, j. dissents in part and assigns reasons.
APPENDIX A
*50 [[Image here]]
*51 [[Image here]]
*52 [[Image here]]
*53 [[Image here]]
*54 [[Image here]]
*55 [[Image here]]
*56 [[Image here]]

. The exact lengths of the paved and unpaved portions of the 1992 servitude are pot clearly established by the record. The numerous maps submitted as joint exhibits by the parties show conflicting measurements, and a finding of the exact length of the paved and unpaved portions is not necessary for resolution of the issues in this appeal.

. The 1992 servitude is a conventional predial servitude of passage. LSA-C.C. arts. 654, 699, 705. The use and extent of such servi-tudes are regulated by the title by which they are created. LSA-C.C. art. 697.

. Also, Joint Exhibit J-33, a quitclaim deed executed in 1998 for a lot on the right side of Hanson Road,'includes a 1993 map showing Hanson Road extending all the way to the Gautreau/Himel property lines. Joint Exhibits J-5, a 2005 map made for the purpose of subdividing Lot 2 on the left side of the 1992 servitude, also shows Hanson Road extending to the northern boundary of Mr. Gautreau’s property line.

.Handwritten notes on the meeting minutes at which the acceptance was made indicate Hanson Road was 1150 feet long, whereas a parish road list and a- road inventory .also admitted into evidence .indicates Hanson Road is 1143 feet long. And, in discovery responses, Ascension Parish stated that it “has accepted the black top portion of Hanson Road into [its] maintenance system.”

. Because we conclude that the entirety of the 1992 servitude was tacitly dedicated to public use, we pretermit consideration of whether, Mr. Bourque's property is an "enclosed estate"-entitled to a right of passage under LSA-C.C. art. 689.